# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEVIN SROGA, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) No. 18 CV 1749 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| CITY OF CHICAGO, DEPARTMENT OF POLICE and THE STATE OF ILLINOIS, | ) |
| | ) |
| *Defendants.* | ) |

## MEMORANDUM OPINION AND ORDER

Kevin Sroga brings this suit against the City of Chicago, Department of Police, and the State of Illinois in connection with his unsuccessful application to become a Police Officer. After consolidating this suit with a factually similar suit Sroga had filed, the Court directed Sroga to file a consolidated complaint. (Dkt. 55). He has done so, alleging claims including age, race, and gender discrimination and various state-law claims. The City of Chicago has moved to dismiss Sroga's consolidated complaint. For the reasons stated here, the City's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is denied. The City's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part. The City's motion to dismiss is denied as to Counts II and III. The Court grants the City's motion to dismiss Counts I and IV–IX and does so without prejudice, with leave for

Sroga to amend his complaint consistent with this opinion, if possible, within 21 days of the publication of this opinion.

## BACKGROUND

The following factual allegations are taken from Sroga's consolidated complaint (Dkt. 65) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Sroga responded to an October 2013 job announcement posted by the City for the position of Probationary Police Officer. (Dkt. 65 at ¶ 12). The announcement advertised that applicants who passed a written exam, supplied required documents, and who otherwise met certain minimum qualifications would be considered for hire. (*Id.* at ¶ 13). The announcement provided that qualifying candidates would receive a lottery number which would serve as the order of selection for hire. (*Id.* at ¶ 13).

Sroga applied for the position and took the Chicago Police Officer Entry Examination on December 14, 2013. (*Id.* at ¶ 15). Soon after, Sroga received a letter from the testing agency stating that he had passed the exam and that his lottery number was 1,546 out of 12,713, and that he would be called for the hiring process according to his lottery number. (*Id.* at ¶¶ 17–18).

Sroga continued on in the hiring process and in October 2014 took the P.O.W.E.R. test—an agility test. (*Id.* at ¶¶ 21, 23–24). The P.O.W.E.R. test has different passing standards for male and female applicants. (*Id.* at ¶ 22). Sroga passed the P.O.W.E.R. test and was further processed for psychological testing, drug testing, medical exams, and more, which he completed. (*Id.* at ¶ 25).

While not entirely clear from the consolidated complaint, it appears that, in 2015, Sroga again applied to take the "Police Officer Exam." (*Id.* at ¶¶ 20 & n.1, 25). He notes that he was 40 years old when he applied to take the exam but was 41 years old when the exam was administered. (*Id.*).

The City of Chicago Municipal Code § 2-152-410(e) provides that "no person above the age of 40 may receive initial appointment as a probationary career service police officer with the police department." On November 16, 2014, Sroga turned 40 years old. (*Id.* at ¶ 26). Sroga alleges that after this time, the City ceased processing his application. (*Id.* at ¶ 32). Sroga received no communications from the City or any other entity notifying him that his applications had been disqualified or that he was no longer being considered for the position. (*Id.* at ¶¶ 35–36). Sroga has reached out to the City, and the City has informed him that he has not been disqualified from consideration. (*Id.* at ¶¶ 35–37). Despite this, he has not received further processing. (*Id.* at ¶¶ 35–37, 46). Sroga alleges that the City has continued to process applicants who are younger or who are Black and Hispanic, including those who had a lottery number higher than his and who should have been processed after him. (*Id.* at ¶¶ 40, 49, 55).

## **LEGAL STANDARD**

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff must carry his burden of establishing that jurisdiction is proper. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). To determine whether jurisdiction

exists, the Court turns to the complaint along with evidence outside of the pleadings. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). A court lacking subject-matter jurisdiction must dismiss the action without proceeding to the merits. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678.).

## **DISCUSSION**

Sroga brings claims for age discrimination against the City (Count I), race discrimination against the City (Counts II and III), and gender discrimination against the City and State (Count IV). He also brings a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), against the City and State (Count V), negligence and gross negligence claims against the City (Counts VI and

VII), and intentional and negligent infliction of emotional distress claims against the City (Counts VIII and IX). (Dkt. 65).[1]

**A. Standing and Ripeness**

The City has alleged that Sroga lacks standing to bring his complaint because he has not suffered any injury. *See McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1063 (7th Cir. 2019) (noting that standing requires "(1) a concrete and particularized injury in fact that is (2) fairly traceable to the alleged action of the defendant and (3) likely to be redressed by a favorable decision"). An injury in fact is established when a plaintiff shows that he suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (internal quotation marks and citations omitted). To be concrete, an injury must be *de facto*, meaning that it must actually exist. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

There has been no injury, the City says, because Sroga admits that he "has not been officially disqualified from consideration for the position." (Dkt. 67 at 5). At the pleading stage, however, we must accept Sroga's factual allegations as true and draw permissible inferences in his favor. *See Schumacher*, 844 F.3d at 675. Sroga has sufficiently alleged that candidates were to be processed in lottery order, yet the City processed candidates out of order, bypassing Sroga. In other words, he alleges that the City passed over his application in order to hire others. Further, his 2013

---

[1] Any references to a "class" are disregarded. This Court previously denied Sroga's motion for class certification. (Dkt. 63).

application (and, later, a 2015 reapplication) has been pending without processing for approximately five years. It is reasonable to infer, given the time that has passed, that the City does not intend to continue processing Sroga's application. Sroga has alleged an injury sufficient to proceed. *See Wilson v. Cook Cty.*, 742 F.3d 775, 784 (7th Cir. 2014) ("To proceed on a refusal-to-hire claim, a plaintiff must at a minimum establish that she suffered some adverse employment action, namely, that she was passed over for a job.").

It may be that the City can show that the procedure followed here was in accordance with standard practice, that others were hired *before* Sroga but not *instead* of him, and that Sroga remains in consideration for the position of Probationary Police Officer. The City, however, has not done so. At this stage of the litigation, were the Court to accept the City's argument, the Court would in essence be saying that the City could avoid all hiring-discrimination claims merely by leaving applications pending indefinitely and never sending rejection notices. The Court declines to do so.

Asserting the same reasoning, the City also argues that any challenge Sroga may make to City of Chicago Municipal Code § 2-152-410(e) is not ripe for review because his application has yet to be rejected under this provision. "Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all." *Wisconsin Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011); *see also Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006) (stating that a claim is not ripe when

the asserted injury is contingent on "future events"). Again, Sroga has alleged that his application processing abruptly halted when he turned 40. He further alleges that up to and after that time, he was passed over for hire in favor of various applicants. His injury is not contingent, it has come to pass, and his claim is ripe for review.

**B. Age Discrimination**

We turn then to the City's Rule 12(b)(6) arguments.[2] Its first pertains to Count I, Sroga's age discrimination claim. Sroga alleges that when he turned 40, his applications "apparently ceased/stopped for no apparent reason." (Dkt. 65, ¶ 32). He attributes this to City of Chicago Municipal Code § 2-152-410(e), which provides that "no person above the age of 40 may receive initial appointment as a probationary career service police officer with the police department." Sroga brings his claim under the Age Discrimination in Employment Act ("ADEA"). "The ADEA protects workers 40 years of age and older from age-based employment discrimination" and prohibits the failure or refusal to hire an individual in the protected class because of his age. *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018); *see* 29 U.S.C. §§ 621, *et seq*.

As the City points out, though, the ADEA has an exemption allowing local governments to put age restrictions, enacted after September 30, 1996, on the hiring

---

[2] Sroga did not address the City's 12(b)(6) arguments, instead asking this Court to first rule on the City's 12(b)(1) arguments and then, pending that ruling, allow Sroga to respond to the 12(b)(6) arguments. Given that Sroga was given more than one extension to respond to the City's motion to dismiss and was notified that the Court was prepared to rule without the benefit of his response, his request is denied. (Dkt. 73, 77).

of law enforcement officers "pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of" the ADEA. 29 U.S.C. § 623(j). The City argues that § 2-152-410(e) falls within this exemption and applies to Sroga. Section 623(j) of the ADEA provides the City with an affirmative defense, which complaints typically "need not anticipate, and attempt to plead around." *Davis v. Indiana State Police*, 541 F.3d 760, 763 (7th Cir. 2008). But "dismissal is appropriate if Plaintiff's complaint, and his arguments in support, conclusively demonstrate that his claim is not legally viable." *Ledbetter v. City of Chicago*, No. 13 CV 9302, 2014 WL 4555579, at *3 (N.D. Ill. Sept. 15, 2014) (citing *Minch v. City of Chicago*, 363 F.3d 615, 618 (7th Cir. 2004)). Here, Sroga's claim is not legally viable.

Sroga argues that the ordinance should only have applied to him when he turned 41 years old, on November 16, 2015, because it is not until that time that he became "above the age of 40." (Dkt. 65, ¶ 33). He further alleges that the City willfully failed to refer him for hire prior to turning 41 so that his hiring would be prevented by the ordinance. (*Id.* at ¶ 54). Sroga points to no case law supporting his construction of § 2-152-410(e). The City, on the other hand, has observed that courts in this district have generally understood § 2-152-410(e) to apply to 40-year-old applicants. *See e.g., Ledbetter*, 2014 WL 4555579, at *3; *Vicenteno v. City of Chicago*, No. 14 CV 2574, 2014 WL 4122863, at *1 (N.D. Ill. Aug. 21, 2014). This Court agrees with the City and with the courts that have previously addressed § 2-152-410(e). In interpreting § 2-152-410(e), the Court must give its words "their ordinary, contemporary, common meaning." *Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d

339, 362 (7th Cir. 2017) (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)). Above means "exceeding in number, quantity, or size: more than." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/above (last visited Oct. 11, 2019). Time is continuous, and once a person celebrates his fortieth birthday, he is "more than" or "above" forty. The Seventh Circuit appears to accept such a construction—it has referred to persons being "over" a certain age as including persons of that age. *See e.g., Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008) (describing the ADEA as protecting "those over the age of forty").

Sroga further argues that § 2-152-410(e) was enacted as a subterfuge to avoid the ADEA, which would mean that it does not fall within the ADEA's exemption. (Dkt. 65 ¶¶ 41, 43, 74–75); 29 U.S.C. § 623(j). Yet he has alleged no facts supporting such a subterfuge. He has alleged only that the ordinance was used to reject applicants based on age. He has not alleged that § 2-152-410(e) is "designed to evade portions of the ADEA other than the age rules," as is required to show a subterfuge. *Davis*, 541 F.3d at 762; *see also, e.g., Ledbetter*, 2014 WL 4555579, at *3 ("An age-based prohibition on hiring is a 'subterfuge' if it is used to achieve a different form of discrimination—if used, for example, to pay older employees less, or to retaliate against employees who oppose age discrimination.").

Count I is dismissed. Sroga has alleged that the City failed to hire him pursuant to § 2-152-410(e), yet he has not pled sufficient facts to state a legally viable

claim that § 2-152-410(e) is anything other than a bona fide hiring plan permissible under the ADEA.

### C. Race Discrimination

Counts II and III allege reverse racial discrimination under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII, 42 U.S.C. § 2000e-2. Both counts allege both disparate impact and disparate treatment. Sroga alleges that the City passed over his lottery number in order move along applicants who had been Chicago Public Schools ("CPS") students. (Dkt. 65, ¶ 59).[3] He states that this is part of a program which provides preferential treatment to these students and has a disparate impact in that it results in more black and Hispanic applicants being appointed to the Police Department. (*Id.* at ¶ 58–59). He also alleges intentional discrimination; he claims that the program is a "mere subterfuge" and was put in place with the intent to disfavor white applicants. (*Id.* at ¶ 59).

Count II alleges a Title VII claim. Disparate impact claims require no proof of discriminatory motive and "'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977)). The City has failed to address Sroga's

---

[3] Although Sroga's application was eventually halted because he turned 40, he was given a lottery number and began moving through the application process based on this number nearly a year before he turned 40. (Dkt. 65, ¶¶ 17-18).

disparate impact allegations and so to the extent Count II alleges a disparate-impact claim the City's motion to dismiss is denied.

The City has addressed Sroga's arguments regarding disparate treatment, also known as intentional discrimination. *Ernst v. City of Chicago*, 837 F.3d 788, 794 (7th Cir. 2016). It argues that Sroga has not made out a prima facie case for a reverse discrimination suit, i.e. a suit "brought by a white plaintiff or a man," because he has not alleged the required "background circumstances sufficient to demonstrate that the particular employer has reason or inclination to discriminate invidiously against whites or men or evidence that there is something fishy about the facts at hand." *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 820 (7th Cir. 2006) (internal quotation marks omitted). The same requirement applies to Title VII, § 1981, and § 1983 claims. *See id.* at 821–22; *Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987).

Sroga may ultimately be required to establish a prima facie case of discrimination before the burden shifts to the City to demonstrate a permissible and nondiscriminatory reason for the adverse employment action. *See, e.g., McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir.2009). However, "the evidentiary burden a Title VII plaintiff must eventually meet to prevail differs from the pleading standards for a motion to dismiss." *See, e.g., Wyss v. Compact Indus., Inc.*, No. 13 C 5135, 2014 WL 960846, at *2 (N.D.Ill. Mar. 12, 2014); *Vega v. Chicago Park Dist.*, 958 F.Supp.2d 943, 953 (N.D.Ill.2013). Sroga is merely at the pleading stage where the requirements in the race-discrimination context are minimal, and he need only allege

that he was passed over for employment because of his race. *See Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019). The City has not argued that Sroga has failed to meet this minimal pleading standard, and therefore its motion to dismiss Count II is denied.

Count III alleges a violation of § 1983 premised on a violation of § 1981. The City argues that Sroga cannot bring a § 1981 claim, but has failed to bear that out.[4] *See Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 467 (7th Cir. 2014) ("[T]he prohibitions in 42 U.S.C. § 1981 are enforced against state actors by suits under section 1983, because section 1981 does not provide remedies against state actors for violation of its prohibitions."). When bringing such a claim, "a plaintiff 'must show that the violation of his "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases.'" *Campbell v. Forest Pres. Dist. of Cook Cty., Ill.*, 752 F.3d 665, 669 (7th Cir. 2014) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989)). Sroga has alleged that he was passed over for hire in favor of minority candidates as result of the City of Chicago's official policy of giving preferential treatment to CPS students, which, he alleges, is a guise to disfavor white applicants. (Dkt. 65 ¶¶ 63–64); *see Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) ("In order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or

---

[4] The City points to earlier pleadings, in which it pointed out that § 1981 provides a remedy for violations committed by private actors, not state actors. (Dkt. 29 at 6); *see Campbell v. Forest Pres. Dist. of Cook Cty., Ill.*, 752 F.3d 665, 667 (7th Cir. 2014). The City argues that Sroga conceded that Count III should be dismissed. But what Sroga said was that he should have brought Count III pursuant to § 1983, which he has done. (Dkt. 40 ¶ 27).

custom not only caused the constitutional violation, but was 'the moving force' behind it."). The City has not shown that Sroga is not permitted to bring a § 1981 claim. Any argument pertaining to this claim regarding whether Sroga established a prima facie case of reverse discrimination fails for the same reasons as Count II. The City has not made any other arguments pertaining to the sufficiency of Count III and so the motion to dismiss the Count is denied. In amending his complaint, however, and in any future motions to dismiss, the Court advises Sroga and the City to address the consequence of alleging disparate impact under § 1981. *See Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991) ("[P]roof of disparate impact does not support section 1981 liability since intentional discrimination is required.").

**D. Gender Discrimination**

Count IV alleges reverse gender discrimination under Title VII and under § 1983 pursuant to the Equal Protection Clause of the Fourteenth Amendment. Courts evaluate claims under Title VII and § 1983 using the same standard. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019). To state a claim for sex discrimination under either, the plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his] sex." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)).

Sroga alleges that as part of the application process, all applicants had to undergo the P.O.W.E.R. agility test, and that the passing standards for women are lesser than the passing standards for men. (Dkt. 65, ¶ 22). As a result, he alleges, it

is much easier for women to be hired. (*Id.* at ¶ 70). The City correctly points out, however, that nowhere in his complaint does Sroga allege that he suffered an adverse employment action, *i.e.* that he was passed over for hire in favor of a female candidate, as a result of these differing standards. Sroga has therefore failed to state a claim under either Title VII or § 1983 and Count IV is dismissed.

### E. *Monell* Claim

In Count V, Sroga alleges a *Monell* claim premised on the age and gender discrimination he alleged in Counts I and IV. As a municipality, the City may be subject to § 1983 liability under *Monell* for constitutional violations caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). For the reasons described above, Sroga has not sufficiently alleged any violation in Counts I or IV. His *Monell* claim therefore fails.[5] *See Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) ("[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.).

### F. State-Law Claims

Counts VI and VII, alleging negligence and gross negligence respectively, are based on the misapplication of City of Chicago Municipal Code § 2-152-410(e). As described above, Sroga has failed to allege that the statute was misapplied and so these claims fail. Count VI also alleges generally that the City was negligent for

---

[5] Although not necessary to resolve Count V, the parties have cited no authority addressing whether an ADEA claim may be the basis of *Monell* liability.

referring younger applicants with higher lottery numbers before Sroga, even before he turned 40. Yet negligence requires that the City owed Sroga a duty. *Guvenoz v. Target Corp.*, 30 N.E.3d 404, 422 (Ill. App. Ct. 2015). Although Sroga states in a conclusory manner that the City owed him a duty (Dkt 65 ¶ 83), he does not allege facts explaining what the duty was or why it existed. He has therefore failed to state a claim under Count VI. The City's motion to dismiss Counts VI and VII is granted.

Count VIII alleges a claim for intentional infliction of emotional distress ("IIED"). Under Illinois law, an IIED claim requires that the plaintiff show: (1) extreme and outrageous conduct by the defendant, (2) either intent to cause distress or knowledge that there was a high probability that the defendant's conduct would cause severe emotional distress, and (3) that severe emotional distress actually resulted. *Dixon v. Cty. of Cook*, 819 F.3d 343, 351 (7th Cir. 2016) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). Sroga has alleged only that he suffered "emotional distress such as worrying, grief" and "financial, mental, and emotional distress." (Dkt 65 ¶ 95.) This is not the type of distress sufficient to allege such a claim. Under Illinois law, emotional distress such as "fright, horror, grief, shame, humiliation and worry is not sufficient" to establish "severe emotional distress" for purposes of a claim for intentional infliction of emotional distress. *See e.g.*, *Lovi v. Vill. of Arlington Heights*, 62 F. Supp. 3d 756, 769 (N.D. Ill. 2014) (quoting *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 942 (Ill. App. Ct. 1997)). Further, Sroga only argues by assertion the City's hiring actions were taken with "willfulness and reckless indifference. . . intending to cause him harm. . . in relation to emotional

distress." (Dkt. 65, ¶ 94.) He does not plead factual allegations to support this. Sroga therefore fails to sufficiently allege a claim for IIED. Count VIII is dismissed.

Count IX (incorrectly designated as Count IV) alleges negligent infliction of emotional distress. Under Illinois law, "a direct victim's claims for negligent infliction of emotional distress must include an allegation of contemporaneous physical injury or impact." *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 59 (Ill. 2016). Sroga has failed to allege as much and has therefore failed to state a claim. Count IX is dismissed.

**G. Punitive Damages**

Finally, the City has moved to strike Sroga's prayer for punitive damages. As the City notes, it is not subject to punitive damages in suits under § 1983, Title VII, or the ADEA. 42 U.S.C. § 1981a(b)(1); *Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 916 (7th Cir. 2010); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 773 (7th Cir. 2002). The City's motion to strike is granted to the extent Sroga alleges punitive damages for these claims.

**CONCLUSION**

The City's motion to dismiss is granted in part and denied in part. Counts I and IV–IX are dismissed without prejudice. The Court grants Sroga leave to amend his complaint consistent with this opinion, if possible, within 21 days of the publication of this Opinion. The City's motion to dismiss is denied as to Counts II and III. For the Counts that remain pending, the Court has denied the motion to dismiss because the City has in large part failed to attack the sufficiency of the

consolidated complaint. Should Sroga choose to amend the complaint, the City may wish to more thoroughly address whether Sroga has adequately pleaded each Count in a future motion to dismiss.

_____
Virginia M. Kendall
United States District Judge

Date: October 16, 2019