IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN SROGA, | ) )  ) |
| *Plaintiff,* | ) ) ) No. 18 C 1749 |
| v. | ) ) Judge Virginia M. Kendall |
| CITY OF CHICAGO, DEPARTMENT OF POLICE and THE STATE OF ILLINOIS, | ) ) ) ) |
| *Defendants.* | ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

Kevin Sroga sued the City of Chicago Police Department and the State of Illinois in connection with his unsuccessful application to become a Police Officer. After consolidating this suit with a factually similar suit Sroga had filed, the Court directed Sroga to file a consolidated complaint. (Dkt. 55). He did so, alleging claims of age, race, and gender discrimination and various state-law claims. Although he named the State as a Defendant, he has, to date, failed to serve it.

The City moved to dismiss Sroga's consolidated complaint, and the Court dismissed his age and gender discrimination claims, his *Monell* claim, and his state-law claims, but not his race discrimination claims. *See Sroga v. City of Chicago*, No. 18 CV 1749, 2019 WL 5208870 (N.D. Ill. Oct. 16, 2019). Thereafter, Sroga filed what this Court will refer to as an amended consolidated complaint. (Dkt. 94). The City

has again moved to dismiss. (Dkt. 97). For the following reasons, the City's motion is granted in part and denied in part.

## BACKGROUND

The following factual allegations are taken from Sroga's amended consolidated complaint and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Sroga responded to an October 2013 job announcement posted by the City for the position of Probationary Police Officer. (Dkt. 94 ¶¶ 12–15). The announcement advertised that applicants who passed a written exam, supplied required documents, and who otherwise met certain minimum qualifications would be considered for hire. (*Id.*). The announcement also provided that qualifying candidates would be placed on a referral list in lottery order. (*Id.*). When Sroga applied to take the written exam, he was 38 years old, but he was 39 when he sat for the exam. (*Id.* at ¶ 16). The announcement stated that per municipal code, no person could be appointed as a Probationary Police Officer after his fortieth birthday. (*Id.* at ¶ 32).

Sroga passed the written exam and was given lottery number 1,546 out of 12,713 for further processing of his application. (*Id.* at ¶¶ 17–18; Dkt. 17 at 48–51).[1] His notice indicated that, as vacancies became available, candidates would be referred in lottery order to participate in the remainder of the selection process. (Dkt. 94 ¶ 18; Dkt. 17 at 49). The notice indicated that, for those with a lottery number

---

[1] In his amended consolidated complaint, Sroga repeatedly refers to Exhibit numbers which correspond to exhibits filed with one of his earlier complaints, Dkt. 17. At times, there are discrepancies between what Sroga alleges and what is stated in the exhibit he cites. In such cases, the Court relies on the cited exhibits.

between 1 and 2,000, it was highly likely that they would be called to take the required P.O.W.E.R. test (an agility test) in April 2014. (Dkt. 94 ¶¶ 19, 23; Dkt. 17 at 50).

Sroga alleges that 1,500 candidates were selected, in lottery order, to move along in the hiring process in accordance with the timeframe provided in the notice. (Dkt. 94 ¶¶ 20–22). An additional 500 candidates were moved along in the same time frame, out of sequential order. (*Id.*). Sroga alleges that because his lottery number was 1,546, he did not move along as scheduled. (*Id.*).

Sroga received a notice to report for his P.O.W.E.R. test in September 2014, and he took and passed the test on October 5, 2014. (*Id.* at ¶¶ 26–27). His fortieth birthday was on November 16, 2014. (*Id.* at ¶¶ 28–30). Sroga appears to have understood that all remaining job requirement testing, such as drug testing and medical exams, needed to be completed before then. (*Id.* at ¶¶ 28–30). Sroga alleges that a Lieutenant told him that, given when his birthday was, it would be "next to impossible" for him to be selected for hire in time and asked Sroga if he wanted to withdraw. (*Id.* at ¶¶ 28–30). Sroga alleges that he completed the additional testing requirements before his birthday. (*Id.* at ¶¶ 28–30).

Sroga alleges that on November 16, 2014, when he turned forty, processing of his application "apparently ceased and stopped." (*Id.* at ¶ 35). Sroga received no communications from the City or any other entity notifying him that his application had been disqualified from consideration for the position. (*Id.* at ¶¶ 38–39). Sroga alleges that the City has since referred Black and Hispanic applicants for hire out of

lottery sequence. (*Id.* at ¶¶ 49–51). He alleges that this was done under the guise of giving preference to candidates who attended Chicago Public Schools, with the true goal of giving a preference to Black and Hispanic candidates. (*Id.* at ¶¶ 49–51).

Sroga also alleges that passing standards for the P.O.W.E.R. test are much easier for women, thereby resulting in disparate treatment of male candidates. (*Id.* at ¶ 24). He claims that this discrepancy both delayed his test and allowed him to be passed over in favor of women. (*Id.* at ¶ 86).

Sroga filed a charge of age, race, and sex discrimination with the United States Equal Opportunity Commission ("EEOC") stemming from his 2013 application on December 11, 2017. (*Id.* at ¶¶ 4–6; Dkt. 17 at 22). He received a right to sue notice on December 18, 2017, and filed suit within 90 days on March 9, 2018. (Dkt. 1; Dkt. 17 at 23).

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678.).

## DISCUSSION

In his amended consolidated complaint, Sroga brings claims for age discrimination (Count I), race discrimination based on a disparate impact (Count II), race discrimination based on disparate treatment (Count III), a gender discrimination claim (Count IV), and a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), based on his other claims (Count V).

Sroga failed to respond to the City's motion to dismiss, despite being given an extension. (Dkt. 103). He has therefore waived arguments in his favor. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (noting that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument. . . results in waiver."). That being said, the Court still assesses the merits of the City's arguments.

### I. Statute of Limitations

The City argues that based on the allegations made in Sroga's amended consolidated complaint, all of his claims are time-barred. "A limitations defense is not often resolved on a Rule 12(b)(6) motion because a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (internal

quotation marks omitted). "But dismissal at this early stage is appropriate when the complaint alleges facts sufficient to establish that the suit is indeed tardy." *Id.*

The City acknowledges that, per Sroga's allegations, he was never informed that he would not be hired. (Dkt. 94 ¶¶ 38–39). Yet the City argues that, per the amended consolidated complaint, a combination of things gave Sroga "constructive knowledge" of a decision not to hire him. It points to the fact that Sroga alleges that the job announcement he responded to stated that no person could be appointed as a Probationary Police Officer after his fortieth birthday. (*Id.* at ¶ 32). He also alleges that a Lieutenant who oversaw recruit processing asked him if he would like to withdraw because of the unlikelihood he would be able to be selected for hire in time. (*Id.* at ¶¶ 28–30). The City also points to the fact that Sroga later reapplied, an allegation from his earlier consolidated complaint which he dropped in his current amended consolidated complaint. (Dkt. 65 at ¶¶ 20 & n.1, 25). The City argues that the Court should take judicial notice of the reapplication, and that reapplication is inconsistent with a belief that the earlier application was still being considered. *See Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019) ("An amended pleading does not operate as a judicial tabula rasa.")

Because Sroga's fortieth birthday was November 16, 2014, based on his own allegations, the City says, Sroga knew that, as of this date, he would not be selected for hire. Yet he failed to file a complaint with the EEOC within 300 days of that date and failed to bring his 42 U.S.C. § 1983 claims within two years of it. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016) (discussing that, to be raised in

subsequent litigation, "[b]oth Title VII claims and ADEA claims must be filed within 300 days of the alleged discriminatory act or unlawful practice" (citing 42 U.S.C. § 2000e–5(e)(1) (Title VII statute of limitations); 29 U.S.C. § 626(d)(1)(B) (ADEA statute of limitations))); *see also Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) ("A § 1983 claim borrows the statute of limitations for analogous personal-injury claims in the forum state; in Illinois that period is two years.") (citing 735 ILCS 5/13-202); *Woods v. Illinois Dep't of Children & Family Servs.*, 710 F.3d 762, 766 (7th Cir. 2013). The City, therefore, argues that Sroga's claims are time barred.

But something is missing from the City's position—an argument that Sroga was, in fact, rejected for hire when he turned forty, not just that he thought he might have been. The City seems to avoid stating this outright, perhaps because it intends to argue that Sroga still has never been rejected from consideration, an argument it made previously. *See Sroga*, No. 18 CV 1749, 2019 WL 5208870, at *2.

The clock began to run for Sroga when he suffered an injury, here an adverse employment action. *See Wilson v. Cook Cty.*, 742 F.3d 775, 784 (7th Cir. 2014) ("To proceed on a refusal-to-hire claim, a plaintiff must at a minimum establish that she suffered some adverse employment action, namely, that she was passed over for a job."). Sroga's allegations suggest a belief that he was not being considered after he turned forty. For example, he states that processing of his application appeared to stop at that point. (*See, e.g.*, Dkt, 94 ¶ 35). But a halt in processing does not necessarily equate to a rejection nor does it mean that at that point the City continued to process other applicants or "pass over" Sroga. And the City's discussion of Sroga's

2015 reapplication could cut both ways. It could, for example, suggest that Sroga did not understand his fortieth birthday to have been the point after which he could not be hired. Further, Sroga previously alleged that, in 2015, he was at least initially processed in that he was allowed to sit for the written exam. (Dkt. 65 at ¶¶ 20 & n.1, 25). This cuts against an argument that he was automatically disqualified at age forty or that he knew as much.

Sroga does not ultimately allege when he was rejected. Nor could he, based on his allegations, as the City did not notify him of when, exactly, that happened. (Dkt. 94 ¶¶ 38–39). Nor does the complaint make clear when, exactly, Sroga was passed over for hire in favor of other candidates. While it could have been as soon as he turned forty, or before, the complaint leaves open the possibility that it could have occurred later, if he was still in consideration for employment until some indeterminate point thereafter.

It is highly likely that Sroga was rejected from hire when he turned forty, given City of Chicago Municipal Code § 2-152-410(e) which provides that "no person above the age of 40 may receive initial appointment as a probationary career service police officer with the police department." It is possible, however, based upon the face of the amended consolidated complaint, that the rejection came at some unknown later date. And if there is "any set of facts that if proven would establish a defense to the statute of limitations," then the motion to dismiss should be denied. *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003). For the reasons just described, "that

possibility exists." *Id.* Dismissal on statute of limitations grounds is therefore not appropriate at this time.

The Court notes, however, that it would be less than ideal for the parties to engage in lengthy discovery on claims that might be procedurally barred. If it becomes clear later in the case that Sroga's claims are time-barred, the City is free to raise the issue with the Court.[2]

## II. Age Discrimination Claim

Sroga brings in Count I an age discrimination claim. This claim has multiple parts. He alleges: (1) that the municipal code is being misapplied to forty-year-olds (Dkt 94 ¶ 60); (2) the municipal code is invalid as it was enacted as a subterfuge to thwart the ADEA (Dkt 94 ¶¶ 64–65); (3) the municipal code violates the Fourteenth Amendment by discriminating on the basis of age (Dkt 94 ¶ 48); and (4) the municipal code violates the Fourteenth Amendment by discriminating against forty-year-olds who are seeking initial employment as officers as compared to those who were previously employed as officers (Dkt. 94 ¶ 61).[3]

---

[2] Because it declines to rule on statute of limitations grounds, the Court will not address the statute of limitations on Sroga's 42 U.S.C. § 1981 claim, brought pursuant to 42 U.S.C. § 1983. *See, e.g., McKinney v. Office of Sheriff of Whitley Cty.*, No. 1:15CV79, 2018 WL 3434710, at *3 (N.D. Ind. July 17, 2018) (discussing that four-year statute of limitations may apply to a § 1981 claim brought pursuant to § 1983), *but see Banks v. Illinois Cent. R.R. Co.*, No. 18-CV-2506, 2019 WL 3080923, at *9 (N.D. Ill. July 15, 2019) (discussing that a two-year statute of limitations applies to a § 1981 claim based on pre-contract formation conduct).

[3] Sroga also possibly raised a class-of-one Fourteenth Amendment claim by arguing that the City purposely failed to refer him for hire until he aged out. (Dkt 94 ¶ 56). Although the standard for a class-of-one equal protection claim is currently unsettled in this circuit, *see Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc) (5-5 division resulting in no controlling opinion), at a minimum, to state such a claim, Sroga must allege that he was: (1) "intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment." *Forgue v. City of Chicago*, 873 F.3d 962, 968 (7th Cir. 2017) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601–02 (2008)). But the only bases he cites for being treated differently are

Sroga's argument that Municipal Code § 2-152-410(e) must be applied to forty-one-year-olds and not forty-year-olds is incorrect for the reasons stated in this Court's previous Opinion dismissing this argument. *Sroga*, No. 18 CV 1749, 2019 WL 5208870, at *4. The Court does not repeat its reasoning here. This claim is dismissed with prejudice.

Next is Sroga's subterfuge argument. As the Court previously described, the ADEA has an exemption allowing local governments to put age restrictions on the hiring of law enforcement officers "pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of" the ADEA. 29 U.S.C. § 623(j). The City argues that § 2-152-410(e) falls within this exemption and applies to Sroga. Section 623(j) of the ADEA provides the City with an affirmative defense, which complaints typically "need not anticipate, and attempt to plead around." *Davis v. Indiana State Police*, 541 F.3d 760, 763 (7th Cir. 2008). But "dismissal is appropriate if Plaintiff's complaint, and his arguments in support, conclusively demonstrate that his claim is not legally viable." *Ledbetter v. City of Chicago*, No. 13 CV 9302, 2014 WL 4555579, at *3 (N.D. Ill. Sept. 15, 2014) (citing *Minch v. City of Chicago*, 363 F.3d 615, 618 (7th Cir. 2004)).

Last time around, Sroga made only his forty-one-year-old argument and alleged only that the ordinance was used to reject applicants based on age, which is inconsistent with the requirement that to show subterfuge, the ordinance must be

---

his age, race, and sex—he does not otherwise allege that others similarly situated were treated differently—so the Court construes his claims as only being made on age, race, and sex grounds and does not consider him to have made any other claims.

"designed to evade portions of the ADEA other than the age rules,". *Davis*, 541 F.3d at 762; *see also, e.g., Ledbetter*, 2014 WL 4555579, at *3 ("An age-based prohibition on hiring is a 'subterfuge' if it is used to achieve a different form of discrimination— if used, for example, to pay older employees less, or to retaliate against employees who oppose age discrimination."). It was clear from the face of the complaint that Sroga's claim was not viable.

This time around, however, Sroga argues that § 2-152-410(e) is a subterfuge because it was enacted to avoid paying pensions and because it does not apply when rehiring employees. The City has not addressed these arguments. It could also be that these arguments are not viable, but the City has not made such an argument, and the Court will not make the argument for the City. Courts are not obligated "to research and construct the legal arguments open to parties, especially when they are represented by counsel." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (internal quotation marks omitted).

All the City argued was that Sroga "offers no well-pleaded facts alleging MCC § 2-152-410(e) is designed to evade portions of the ADEA other than the age rules as is required to show a subterfuge." (Dkt. 97 at 7). This misunderstands the Court's previous ruling and misunderstands Sroga's burden. Section 623(j) is an affirmative defense that Sroga need not plead around. *See Minch*, 363 F.3d at 630 (noting that a broad claim of subterfuge might state a claim if it is not otherwise clear that "the particular theory of subterfuge that the plaintiffs are pursuing is not viable"). Unlike

last time, it has not been made clear that Sroga's theory of subterfuge is not legally viable, and the Court will not dismiss it.

Finally, there are Sroga's Fourteenth Amendment claims. He argues that § 2-152-410(e) impermissibly discriminates on the basis of age. "Rational basis scrutiny applies to equal protection discrimination claims on the basis of age. . . ." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1153 (7th Cir.), *cert. denied sub nom. L.D. R. v. Saul*, 140 S. Ct. 378 (2019). The City has presented a rational basis of ensuring that the police force remains effective. Sroga has not responded with any argument to the contrary, waiving the argument that this is not a rational basis. This claim is therefore dismissed with prejudice. *See Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d 1047, 1056 (7th Cir. 2018) (noting that, under rational basis review, "the burden is on plaintiffs to present evidence that negates every conceivable basis for the statute")

The City, however, has failed to address Sroga's claim that the ordinance violates the Fourteenth Amendment by treating forty-year-olds (and those older) who are seeking initial employment as officers and forty-year-olds (and those older who were previously employed as officers differently and so the Court will not dismiss this claim.

### III. Gender Discrimination Claim

Sroga brings in Count IV a gender discrimination claim under Title VII and § 1983 pursuant to the Equal Protection Clause of the Fourteenth Amendment. He alleges: (1) that differing passing standards for women and men on the P.O.W.E.R.

test violate the Fourteenth Amendment; and (2) he was passed over for hire in favor of women who would not otherwise have been hired. (Dkt 94 ¶¶ 82–87).

The Court is cognizant of the fact that Sroga has largely made the same allegations in his amended consolidated complaint, allegations the Court previously found insufficient. Yet courts are directed to construe a pro se complaint "liberally, holding it to a less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation marks omitted). The Court therefore will not dismiss with prejudice Count IV if there is any basis on which it could be considered to have stated a claim, even if Sroga has failed to argue as much in a response.

As the Court previously stated, claims under Title VII and § 1983 are evaluated using the same standard, *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019), and the pleading standard is low. To state a claim for sex discrimination under either, the plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his] sex." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)); *see also Wilson*, 742 F.3d at 784 ("To proceed on a refusal-to-hire claim, a plaintiff must at a minimum establish that she suffered some adverse employment action, namely, that she was passed over for a job.").

Plaintiff has alleged in his amended consolidated complaint that he was passed over in favor of female applicants. (Dkt. 94 ¶ 86). Under the liberal standards in this circuit, this is enough to state a claim. The City may ultimately be correct that all

that Sroga can show is that his application was delayed on account of his sex (if at all) and not that he suffered any adverse employment action on account of it. But given the leniency this Court must construe the complaint with, the Court will not at this point dismiss Count IV on this basis.

The City again incorrectly states that, to make out a reverse discrimination claim, Sroga must allege some "background circumstances sufficient to demonstrate that the particular employer has reason or inclination to discriminate invidiously against whites or men or evidence that there is something fishy about the facts at hand." *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 820 (7th Cir. 2006) (internal quotation marks omitted). As the Court previously described, this standard is different from the minimal one applied at the motion-to-dismiss stage. *See Sroga*, No. 18 CV 1749, 2019 WL 5208870, at *5 ("However, the evidentiary burden a Title VII plaintiff must eventually meet to prevail differs from the pleading standards for a motion to dismiss." (internal quotation marks omitted)). As noted above, Sroga has met these minimal pleading standards and the Court will not dismiss his claim at this stage.

As to the broader sex discrimination claim, the City argues that different passing standards for men and women are not discriminatory when they hold men and women to equal standards of compliance and measure the minimum qualifications necessary for successful performance of the job. (*See* Dkt. 97 at 11 (citing *Bauer v. Lynch*, 812 F.3d 340, 351 (4th Cir. 2016) ("Put succinctly, an employer does not contravene Title VII when it utilizes physical fitness standards that

distinguish between the sexes on the basis of their physiological differences but impose an equal burden of compliance on both men and women, requiring the same level of physical fitness of each.") and *Lanning v. Se. Pennsylvania Transp. Auth. (SEPTA)*, 181 F.3d 478, 490 (3d Cir. 1999) (noting that it is required that "a discriminatory cutoff score be shown to measure the minimum qualifications necessary for the successful performance of the job in question"))). While the City's argument may have merit, the Court does not, at this stage, have before it a record from which to asses the burdens that the P.O.W.E.R. test poses on men versus women and whether they are necessary. The Court declines to dismiss this claim at this stage.

### IV.     *Monell* Claim

In Count V Sroga brings a *Monell* claim. (Dkt. 94 ¶¶ 88–94). Pursuant to *Monell*, "[a] local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). The Court construes Sroga's claim as seeking damages for the official policies of applying § 2-152-410(e), the CPS preference, and the P.O.W.E.R. test to pass over him.

Sroga also references a failure to train and supervise employees. (Dkt. 94 ¶ 93). Under limited circumstances, a municipality's failure to train or supervise its

employees may "rise to the level of an official government policy for purposes of § 1983," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), if the failures amount to "deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019). In other words, a municipality may be liable because it fails to implement training despite an obvious need for it. *City of Canton*, 489 U.S. at 390. Here, however, Sroga's allegations appear to be that the City improperly trained its officers to follow the aforementioned official policies. So, the Court analyzes the claim as one challenging official policies.

The City cites *Milwaukee Cty. Pavers Ass'n v. Fiedler*, 922 F.2d 419 (7th Cir. 1991), for the proposition that Sroga cannot challenge the City's use of the P.O.W.E.R. test as that is a test created by the State. *Fielder* is not directly on point. In *Fielder*, the Seventh Circuit concluded that the plaintiffs could not challenge a state's application of a federal statute while conceding that the federal statute was constitutional. 922 F.2d 419, 423 ("If the state does exactly what the statute expects it to do, and the statute is conceded for purposes of the litigation to be constitutional, we do not see how the state can be thought to have violated the Constitution."). Here, unlike in *Fielder*, and given the leniency this Court must apply, the amended consolidated complaint is construable as challenging the underlying state statute *and* the City's application of it. The City has otherwise failed to support its argument that a plaintiff can never challenge a municipality's application of state law, and so the Court will not reach that argument. *Crespo*, 824 F.3d at 674 (noting that

"perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

The City does not otherwise address Count V except to say that it fails to the extent Sroga's underlying claims fail, which is uncontroversial. Sroga will not be permitted to pursue this claim under the theories of Count I the Court disposed of earlier in this Opinion.

## **CONCLUSION**

The City's motion to dismiss is granted in part and denied in part. Count I is partially dismissed with prejudice to the extent that it alleges that the municipal code is being misapplied to forty-year-olds and that the municipal code violates the Fourteenth Amendment by discriminating on the basis of age. Count V is partially dismissed with prejudice to the extent it relies on the same arguments. The motion dismiss is otherwise denied.

_____
Virginia M. Kendall
United States District Judge

Date: May 4, 2020